FILED
03 MAR -5 AM 11: 12
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY BODDIE, )
)
    Plaintiff, )
)
vs. ) CV 02-J-650-S
)
COLBERT COUNTY EMERGENCY )
MANAGEMENT )
COMMUNICATIONS DISTRICT, )
)
    Defendant. )

**ENTERED**
MAR 5 2003

## MEMORANDUM OPINION

Pending before the court is defendant's motion for summary judgment (doc. 23). The court has reviewed the motion and the parties' other submissions.

### I. Background

Plaintiff, Mary Boddie, is an African-American female employed by the defendant, Colbert County Emergency Management Communications District, from approximately June 30, 2000 to August 30, 2001. Plaintiff's Depo. at Exh. 22 & 25. Plaintiff was an administrative assistant with defendant. Plaintiff's Depo. at 130. The director of the administrative office and plaintiff's supervisor during plaintiff's employment was Michael Melton. Melton Depo. at 9. Plaintiff's duties included paying the tax deposit, correcting tax problems, paying the bills, keeping track of individual time records and days off, handling bids, ordering supplies, handling the itinerary and taking all incoming

36

calls to the administrative office. Plaintiff's Depo. at 128-129, 345.

In May 2000, Janice Rutland, an employee with defendant, filed a charge of discrimination with the EEOC against defendant for race and sex discrimination. Plaintiff's Exh. 1. In September, 2000, Deborah Aday, another employee of defendant, provided written notice to defendant that she supported Rutland's claims. *Id.* In November 2000, Rutland filed suit against defendant for race and sex discrimination. *Id.* In February 2001, Aday filed a charge with the EEOC for retaliation against defendant. *Id.*

Plaintiff asserts that she was told Rutland and Aday were making charges of discrimination against defendant and she was asked on several occasions to sign statements against the two complainants. Plaintiff's Depo. in *Aday v. Colbert County Emergency Management*, CV 01-S-1489-NW, at 57-58, 48-49, Plaintiff's Depo. at 313-314. Moreover, Melton constantly asked plaintiff to record and write-up instances of Rutland and Aday's conduct. However, plaintiff refused these requests. Plaintiff's Depo. at 285, 289. Plaintiff asserts that she first refused to sign any affidavits against Rutland and Aday but after these statements were revised to her satisfaction she did sign them. Plaintiff's Depo. at 399-401.

Plaintiff asserts that thereafter she would routinely refuse Melton's requests to monitor Aday and Rutland. Subsequently, Melton allegedly took away job duties from her and engaged in other activity which she alleged to be retaliatory. Plaintiff's Depo. at

124-25, 286, 289, 290, 298-300. Plaintiff also asserts that she repeatedly requested to be evaluated but Melton refused to do so and that she was supposed to receive a $5,000 raise, but instead, plaintiff received a smaller raise.

Plaintiff asserts that during her last month in defendant's employment a number of complaints were made against her. Specifically, on August 16, 2001, plaintiff received a "write-up" and was suspended for 3 days with pay for not turning in her time-sheet. Plaintiff asserts that this "write-up" was unwarranted. Plaintiff's Depo. at 167-68. A number of complaints were made against plaintiff thereafter by other employees.

On August 30, 2001, plaintiff was terminated from her employment. There were a variety of reasons for this termination: (1) plaintiff never produced a time sheet for the time that she had been off though she had been written up twice for it; (2) she falsely called in sick on August 23 but appeared that night at a candidate's forum then called in sick again on August 24; (3) she took a personnel file and removed it from the premises after being warned not to remove business records from the premises; (4) she was absent excessively; (5) she had repeatedly poor performance; (6) she was late with a tax deposit; (7) she was late with commission checks; (8) she was late with paying an EMD Bill; (9) she failed to enter all of the checks into the computer making it difficult to reconcile E911 accounts; (10) she failed to set up new employees in the computer for taxes; (11) she failed to correct tax problems on employee withholding after it was brought to her attention; (12) she failed to update emergency plans that dispatchers needed for the

airport; (13) she failed to properly handle employee retirement payments; (14) she was chronically late in paying bills; and (15) several co-employees complained about her disruptive conduct and refusal to cooperate. Melton Affidavit.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-

4

moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case...A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III. Analysis
**A. Plaintiff's 42 U.S.C. § 1981 claims through 42 U.S.C. § 1983.**

The Supreme Court has held that a municipality may not be liable under 42 U.S.C.

§ 1983 on a theory of respondeat superior. A municipality may only be found liable under § 1983, "when execution of a government's policy or custom, whether made by its lawmakers or by *those whose edicts or acts may fairly be said to represent official policy,* inflicts the injury that the government as an entity is responsible under." *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) *quoting Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Eleventh Circuit has interpreted the law in this area to "preclude §1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decision making discretion to the subordinate, but retains the power to review the exercise of that discretion." *Id.* at 1399.

While Melton made the decision to terminate plaintiff, this decision was subject to review by the board. King Affidavit. Plaintiff made a grievance with the board about her termination and the board upheld the termination decision made by Melton. Plaintiff's Depo. at 178-88. Plaintiff has failed to present any evidence of discriminatory animus on the part of the Board. Accordingly, defendant is entitled to summary judgment as to Plaintiff's §1983 claims.

**B. Plaintiff's Title VII Race-Discrimination Claims**

A fundamental requirement for bringing a civil suit under Title VII is the filing of an EEOC charge within 180 days of the unlawful employment practice. 42 U.S.C. § 2000 E-5(e)(1). Plaintiff filed her EEOC charge on February 11, 2002. Defendant correctly

asserts that any allegedly unlawful employment practice occurring prior to August 15, 2001 (180 days prior to the charge) is barred. Accordingly, plaintiff's disparate impact race discrimination claims for (1) not being given a raise; (2) the removal of some of her job duties; (3) having her paycheck taken away; (4) not being given a job evaluation; and (5) not being given training on her job duties, are barred. Plaintiff's claim for hostile environment race discrimination is also barred as plaintiff has failed to show any action, which makes up a part of her hostile environment claim, occurred after August 15, 2001. The only alleged discriminatory employment acts that took place after this deadline are a three-day suspension with pay (along with an accompanying "write-up") and plaintiff's termination. The Supreme Court has distinguished between discrete acts, which may be used to make up a disparate impact claim and non-discrete acts, which may be used as an element of a hostile environment claim. *National Rail Road Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2071, 153 L.Ed.2d 106 (2002) A discrete act is a "single 'occurrence,' even where it has a connection to other acts." *Id.* Both of these actions fall within the Supreme Court's definition of archetypical discrete acts and thus form the basis for potential disparate treatment claims rather than a hostile environment claim. *Id.*

As plaintiff was suspended with pay (along with being "written up") and terminated after August 15, 2001, these claims are not time-barred. To present a claim for disparate treatment, plaintiff must present substantial evidence that: (1) she is a member of a protected class; (2) she has been subjected to adverse employment action;

(3) similarly situated employees not in her protected class were more favorably treated; and (4) she was qualified for the job or job benefit at issue. *Rice-Lamar v. City of Fort Lauderdale, Florida*, 232 F.3d 836, 842-43 (11th Cir. 2000). Should plaintiff set forth this prima facie case, the *McDonnell-Douglas* burden shifting analysis then applies. *Id.*

First, plaintiff's claim for disparate treatment about being "written up" by her supervisor is barred because this action does not constitute an adverse employment action. There is no bright line test regarding what constitutes an adverse employment action and a decision must be made on a case by case basis. *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239 (11th Cir. 2001). However, any adverse employment action must amount to some "serious and material" impact on a person's employment. *Id.* There is simply no evidence that the independent action of being "written-up" without more constitutes an adverse employment action. There is no evidence of a material or substantial impact on plaintiff's employment from this action alone.

Second, plaintiff's claim for being suspended with pay similarly must fail because it does not constitute an adverse employment action. A suspension with pay does not constitute a "serious and material change in the terms, conditions or privileges of employment." *See Davis*, 245 F.3d at 1239; *Breaux v. City of Garland*, 205 F.3d 150, 164 (5th Cir. 2000); *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999) abrogated on other grounds by *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Plaintiff has failed to present sufficient evidence to demonstrate that this suspension with pay had any

8

material or substantial effect on her employment.

Third, it is necessary to address plaintiff's claim for termination based upon race discrimination. Plaintiff has clearly succeeded in setting forth a prima facie case for race-based termination. The burden shifts to the defendant to present legitimate non-discriminatory reasons for plaintiff's termination. *McDonnell-Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendant has presented evidence of a variety of non-discriminatory reasons for plaintiff's termination including: (1) plaintiff never produced a time sheet for the time that she had been off though she had been written up twice for it; (2) she falsely called in sick on August 23 but appeared that night at a candidate's forum and then called in sick again on August 24; (3) she took a personnel file and removed it from the premises after being warned not to remove business records from the premises; (4) she was absent excessively; (5) she had repeatedly poor performance; (6) she was late with a tax deposit; (7) she was late with commission checks; (8) she was late with paying an EMD Bill; (9) she failed to enter all of the checks into the computer making it difficult to reconcile E911 accounts; (10) she failed to set up new employees in the computer for taxes; (11) she failed to correct tax problems on employee withholding after it was brought to her attention; (12) she failed to update emergency plans that dispatchers needed for the airport; (13) she failed to properly handle employee retirement payments; (14) she was chronically late in paying bills; and (15) several co-employees complained about her disruptive conduct and refusal to

cooperate. Melton Affidavit. The court finds defendant has produced legitimate reasons for plaintiff's termination.

The burden then shifts to the plaintiff to demonstrate pretext. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Plaintiff first attempts to show pretext by arguing that defendant has added to the number of reasons for why she was fired since the time of her firing. However, pointing to additional legitimate non-discriminatory reasons for an action that were previously undisclosed is not evidence of pre-text. *Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998). Pre-text would only be demonstrated by evidence of contradictory reasons being given. *Id.*

Plaintiff's other proffered evidence of pretext involves her alleged refusal to participate in retaliation against Aday. However, plaintiff's allegations of comments made by Melton simply fail to demonstrate any form of **racial** animus against plaintiff and thus they cannot be used to demonstrate that defendant's reasons for her termination were a pre-text for race discrimination. *See Boyce v. Belden*, 2002 WL 171697 n.1 (M.D. Ga. 2002) *citing Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321 (11th Cir. 1998). Thus, as plaintiff has failed to show any pre-text for her claim for race-based termination, this claim is due to be dismissed.

**C. Plaintiff's Title VII Retaliation Claims**

Plaintiff has also made a claim for retaliation for engaging in protected activity. To set forth a claim for retaliation, either direct or circumstantial evidence must be presented in support. Plaintiff asserts that she has direct evidence of retaliation. "Where the non-movant presents direct evidence that, *if believed by the jury*, would be sufficient to win at trial, summary judgment is not appropriate *even when the movant presents conflicting evidence*." *Bass v. Board of County Commissioners, Orange County, Florida*, 256 F.3d 1095, 1112 (11th Cir. 2001). Direct testimony must be produced that the employer acted with a discriminatory motive. *EEOC v. Alton Packaging Company*, 901 F.2d 920, 923 (11th Cir. 1990). Should the plaintiff present this evidence, the burden goes to the defendant to "prove by a preponderance of the evidence that the defendant would have reached the same decision without the factor proved." *Id.*

However, the statements plaintiff alleges constitute direct evidence of retaliatory animus simply fail to meet the standard for direct evidence. First, Melton allegedly stated that defendant tried to get plaintiff to sign a false affidavit. Plaintiff's Depo. at 397. Plaintiff originally refused to sign it because she thought the language in the affidavit was too harsh. However, the language was later revised to plaintiff's satisfaction and plaintiff signed it. *Id.* at 399-401. This is not direct evidence of a discriminatory motive on defendant's part. Second, Melton allegedly talked to plaintiff about how "you were either on his team, or you were not on his team." Plaintiff Depo. in *Aday*, CV 01-S-1489-NW, at

11

19-20. It is simply not clear as to what, if any, intent is behind this phrase, but it clearly is insufficient to demonstrate direct evidence of retaliatory animus. Third, plaintiff states in her brief that "Melton continuously requested that the plaintiff assist him in his retaliation against Aday and Melton (sic) and would tell her that he needed her when she would refuse." Plaintiff's Brief at 18. This comment likewise fails to present clear evidence of retaliatory animus towards plaintiff.

Thus, plaintiff must set forth a prima facie case through the *McDonnell Douglas* framework. Even assuming plaintiff could make this showing, the same legitimate non-discriminatory reasons apply as previously articulated above. Thus, plaintiff must again present evidence of pre-text. The only possible evidence of pre-text are the comments plaintiff asserted constitute direct evidence. However, these comments are simply insufficient to demonstrate pre-text as to defendant's legitimate reasons for firing plaintiff.

First, the comments fail to demonstrate any retaliatory animus on the part of Melton. Plaintiff states that there were comments made by Melton in an attempt to force her to sign an affidavit against Aday. However, plaintiff ultimately signed an affidavit that she found satisfactory to her. Therefore, as plaintiff signed this affidavit, there would be no reason to retaliate against her.

Secondly, it would require simply too many inferences to interpret Melton's other alleged statements to plaintiff as evidence of pre-text for her termination or some

12

retaliatory animus.

Thirdly, even if these comments did demonstrate some animus, there were several objective reasons for which plaintiff was fired. Plaintiff has failed to present any evidence as to the defendant's stated non-discriminatory reasons being a pretext for her termination. For example, plaintiff utilized her sick leave, but instead of being sick she used the opportunity to appear on a television program as a candidate for school board. Nothing in these comments does anything to dispute the validity of the proffered legitimate reasons for terminating plaintiff. Accordingly, plaintiff's claim for retaliation is due to be dismissed.

## IV. Conclusion

Based upon all of the foregoing, defendant's motion for summary judgment is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**DONE** and **ORDERED** this the ____4____ day of March 2003.

Inge P. Johnson
U.S. District Judge